```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MEIR BABAEV and MICHAEL ARBIV,

                                Plaintiff(s),            ORDER
                                                         CV03-5076 (DLI)(WDW)
        -against-

RICHARD GROSSMAN, RICHARD STUART
CATERERS, LTD. and RICHARD STUART
KOSHER CATERERS, LTD.,
                                Defendant(s).
-------------------------------------------------------------------X
```
**WALL, Magistrate Judge:**

Before the court is a motion by the plaintiffs, docketed as the "Fifth MOTION for Extension of Time to Complete Discovery," (DE[64]), plaintiffs' motion to "Amend/Correct" a post trial memorandum (DE[73]), and a counter-motion by the defendants to quash exhibits in the plaintiffs' post trial memorandum (DE[74]). Although the earliest motion is docketed as a motion for a discovery extension, the gravamen of it is the plaintiffs' claim that the defendants have engaged in spoliation of evidence, with a concomitant application for sanctions based on that spoliation. An evidentiary hearing was held on January 17, 2008, and, based on that hearing and on the pre- and post-hearing materials produced by the parties, the court grants motion # 64 to the extent that the jury should be directed to draw an adverse inference, and the plaintiff shall be awarded $5000 in costs and attorneys' fees. Motions # 73 #74 are both denied.

Briefly stated, the complaint in this action alleges that the plaintiffs were fraudulently induced to invest $100,000 in defendant Richard Stuart Kosher Caterers (RSKC), and $75,000 in defendant Richard Stuart Caterers, Ltd. (RSC). Contentious discovery ensued, with numerous disputes, motions and extensions. In November 2007, the plaintiffs moved for an extension of time to complete their inspection of certain of defendants' business records, requesting also the

imposition of serious sanctions. DE[64]. They alleged that the court had ordered, on 10/5/07, that they should complete their inspection, using a forensic accountant, by 10/31/07, but they were unable to do so because of the defendants' failure to timely provide the documents. They also accused the defendants of having engaged in spoliation of evidence and willful refusal to produce documents. They noted the defendants' "belated" claim that their computer had been lost or misplaced and that many reports and records were unavailable for that reason.

The plaintiffs reported difficulties in setting a date for the court ordered inspection, a process complicated by the death of defendants' accountant's mother, but attributed for the most part to the defendants' alleged foot-dragging. The plaintiffs' accountant reviewed the documents that had been produced, and, in a letter dated 10/29/07, reported extensive deficiencies in the production for certain time periods. DE[64], Ex. 5. He also suggested that some of the documents that were produced from the "Custom Transaction Detail Report" suggested that all of the documents associated with that report should have been available, despite the defendants' claim that they could not produce them because they were on the "lost" computer. The plaintiffs requested that a hearing be held to determine whether spoliation had occurred. *See* DE[64].

The defendants opposed the motion, arguing that any delays in the examination of the documents were not the defendants' fault. *See* DE[65]. They also stated that their efforts to locate additional documents had not been successful, and asserted that they had no obligation to obtain for production documents not in their possession or control. As to the spoliation claim, the defendants stated that the "lost" computer, which had been kept at the Merrick Jewish Center (MJC) when RSKC was the caterer at that location, and which contained RSKC's financial information, had been left at the MJC when RSKC ceased to be the caterer there, and that when

the computer was retrieved, the files were corrupted and could not be accessed. The computer, the defendants reported, was discarded as unusable, its data "not retrieved or otherwise preserved," and that it had been discarded before this lawsuit was started or contemplated. *See* DE[65].

A motion hearing was held on 12/6/08, at which time the court determined that an evidentiary hearing would be necessary. *See* DE[66]. On 1/17/08[1], the evidentiary hearing was held. In support of their spoliation claim, the plaintiffs introduced three witnesses - Ian Fassenfeld, the plaintiffs' CPA, Alan Sussman, President of Merrick Jewish Center when RSKC was its caterer, and Christopher Fiorello, former manager of RSKC. The defendants cross-examined the three plaintiffs' witnesses, but did not introduce any witnesses or exhibits of their own.

At the close of the hearing, the parties were directed to submit simultaneous post-hearing memoranda by 2/8/08. After the memoranda were simultaneously submitted, the defendants moved to "correct" the plaintiff's submission. DE[73]. What the defendants actually sought was a ruling striking exhibits to the plaintiffs' memorandum that had not been introduced at the evidentiary hearing. The plaintiff "counter-moved," but actually wrote only to object to the defendants' motion. DE[74]. Both of those motions are denied. The court finds no error in the submission of a portion of testimony from the deposition of Richard Grossman, a principal of the defendant companies. Defense counsel was present at Grossman's deposition, and the transcript is his sworn testimony, which could, for example, be used as evidence on a motion for summary judgment or in other contexts. There is no reason it cannot be used here. If the

---

[1]The docket entry erroneously states that the hearing was held on 1/18/08.

defendants had wanted Grossman to testify at the hearing, they could have produced him, but did not do so. The court also will not strike plaintiffs' counsel's declaration regarding attorneys' fees, although, as stated earlier, a flat sum will be awarded. The court now turns to the spoliation issue, and the issue of whether certain documents have willfully not been produced, although they are allegedly within the defendants' control.

Spoliation:

In their post-hearing memorandum, the plaintiffs recounted their argument that the defendants failed to fully produce their books and records for the years 2000 to 2007, and that the defendants' explanations for why some documents were not demanded were false and that the court should make a finding of spoliation. DE[72]. The defendants had argued that some documents on computers were inadvertently corrupted and could not be produced. The defendants argue that the plaintiffs have not established a prima facie case of spoliation, citing *Zubulake v. UBS Warburg LLC* for the proposition that a party seeking an adverse inference instruction based on spoliation must establish three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact culd find that it would support that claim or defense." 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (citing *Byrnie v. Town of Cromwell,* 243 F.3d 93, 107-12 (2d Cir. 2001)).

The defendants set forth an argument they believe absolves them from a finding of spoliation and an adverse inference instruction, but the bottom line is that the court does not find the defendants' arguments credible, nor their evidence persuasive, on the fundamental issue of

whether they engaged in spoliation of the evidence on the RSKC computer. The plaintiffs, on the other hand, have set forth credible arguments, witnesses and evidence. Although it is difficult to discern precise dates when evidence was corrupted or destroyed, the conclusion to be reached from the record is that the evidence on RSKC's computer should have been preserved, that it was destroyed with a culpable state of mind, and that it was relevant to the plaintiffs' claim that they were lied to by the defendants' about their financial situation when the relevant investments were made. Thus, the court finds that relevant financial information was stored on the lost computer, that spoliation of that evidence occurred, and that the plaintiffs are entitled to an adverse inference regarding that evidence, to the effect that the spoliated record would have confirmed Plaintiffs' stock purchase in RSC and RSKC in the amounts set out in the Complaint, and would have supported plaintiffs' claims of falsity in the defendants' representations about their fiscal soundness, which induced the plaintiffs to invest. The court declines, however, to recommend a finding of fact that the defendants fraudulently induced the plaintiffs to invest.

Documents in the Defendants' Control:

The plaintiffs also argue that the defendants engaged in willful non-production of other documents in violation of court orders. They note the defendants' statement that they had produced all "locatable documents," but argue that the applicable test is not possession or "locatability," but control of documents. Defendants' bad acts, along with their counsel's negligence, they urge, led to the plaintiffs not receiving many documents to which they were entitled.

The plaintiff is correct in arguing that a party is obliged to produce documents in its control, even if those documents are not literally in the party's possession when the demand is

5

made. *See* Fed. R. Civ. P 34 (a)(1). Documents are under a party's control when it has the right, authority or practical ability to obtain them from a non-party. *See Bank of Meridien v. Meridien BIAO Bank Tanzania, Ltd,* 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997); *DeVos v. Lee,* 2008 U.S. Dist. LEXIS 58817, *3-4 (E.D.N.Y. July 29, 2008) (internal citations omitted.) Here, the documents in question are allegedly in the hands of the defendants' bankers, accountant "or others," and the plaintiffs argue that the defendants had the requisite control to obtain the documents, but did not do so.

The defendants argue that bank records belong to the bank, not the individual bank customer and that they do not have control of them. In support of that argument, the defendants cite to *Clayton Brokerage Co., Inc. of St. Louis v. Clement,* 87 F.R.D. 569, 571(D. Md. 1980). That case, in reliance on *United States v. Miller,* 425 U.S. 435 (1975), held that certain bank records are the business records of the bank, and not the customer's personal property. The question in that case, however, was whether the bank customer could challenge a subpoena served on the bank in its capacity as a non-party, on grounds of privacy. It could not do so, the court found, because the records were not confidential communications but instruments of commercial transactions. That finding does not address the question of whether a party has sufficient "control" over its own bank records to acquire them from the bank in response to discovery demands. There is no basis for finding that the defendants lacked sufficient control over their bank records to obtain them, and, although the plaintiffs could have subpoenaed the records from the bank, they were not required to do so if the defendants had control over them. Thus, the court finds that the defendants' failure to produce these documents also warrants the adverse inference detailed *supra*.

Attorney's fees/costs:

The plaintiffs have requested $52,765.80 in monetary sanctions "reimbursing Plaintiff for fees and costs unnecessarily incurred . . . by reason of 'discovery misconduct." DE[72] at 6, Ex. B. The court finds that amount far too high, and will instead award $5000 in costs and fees.

Dated: Central Islip, New York       **SO ORDERED:**
       September 8, 2008

                                      /s/ William D. Wall
                                      WILLIAM D. WALL
                                      United States Magistrate Judge